IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**THE ASSOCIATED PRESS,**
200 Liberty Street
New York, NY 10281

Plaintiff,

v.

**ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS,**
Thurgood Marshall Federal Judiciary Building
One Columbus Circle NE
Washington, DC 20544

and

**ROBERT J. CONRAD, JR.,**
*in his official capacity as Director of the Administrative Office of the United States Courts,*
Thurgood Marshall Federal Judiciary Building
One Columbus Circle NE
Washington, DC 20544

Defendants.

Civil Action No. ______

## COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF

1. The public's ability to observe federal court proceedings is "an essential component in our structure of self-government," *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606 (1982), as "justice cannot survive behind walls of silence," *Sheppard v. Maxwell*, 384 U.S. 333, 349 (1966).

2. To that end, this suit challenges the constitutionality of Federal Rule of Civil Procedure 5.2(c), which restricts transparency in a particularly newsworthy set of cases: habeas corpus petitions filed by noncitizens seeking release from detentions that allegedly violate their constitutional rights.

3. Tens of thousands of such lawsuits (hereinafter, "immigration habeas cases") were filed between January 2025 and April 2026 alone,[1] alongside a sharp increase in the number of individuals held in federal immigration detention centers.[2]

4. Plaintiff The Associated Press ("AP") has sought to report on immigration habeas cases as they are filed nationwide due to the immense public interest in the federal government's immigration enforcement policies and the treatment of detainees in its custody.

5. AP's reporters wish not only to cover fast-moving developments in individual habeas cases,[3] but also to cover immigration habeas cases in the aggregate by reviewing key filings in the thousands of cases docketed since January 2025 to monitor how the administration is enforcing its immigration policies, find patterns in

---

[1] Rebecca Boone, *Appeals Court Rejects Trump's No-Bond Immigration Detentions, Setting Stage for Supreme Court Review*, Associated Press (Apr. 28, 2026), https://perma.cc/9PRP-3PH8.

[2] Rae Ellen Bichell et al., *From Festering Infections to Untreated Cancer, ICE Detainees Across the US Describe Medical Neglect*, Associated Press (June 2, 2026), https://perma.cc/ARD3-SQ2X.

[3] *See, e.g.,* Jake Offenhartz, Kathy McCormack & Michael Casey, *Turkish Student at Tufts University Detained, Video Shows Masked People Handcuffing Her* (Mar. 26, 2025), https://perma.cc/D92B-G28V.

alleged government misconduct, and document how federal courts are handling the flood of immigration habeas petitions.[4]

6. But over and over, AP reporters have met a roadblock that substantially impedes AP's ability to report on these immigration habeas cases in a timely fashion, and in some respects prevents covering these cases at all. That roadblock is Federal Rule of Civil Procedure 5.2(c), which restricts "remote electronic access" to documents filed in "an action or proceeding relating to an order of removal, to relief from removal, or to immigration benefits or detention"—including immigration habeas cases. Fed. R. Civ. P. 5.2(c) ("Rule 5.2(c)" or the "Rule").

7. In effect, Rule 5.2(c) exempts immigration cases from the typical procedure for accessing unsealed federal court records immediately and as a matter of course through the Public Electronic Access to Court Records ("PACER") system. Instead, AP reporters seeking to access *any* document filed in immigration habeas cases (including habeas petitions) must travel or send a representative to the courthouse where the case was filed across the ninety-four federal district courts in the country to attempt to access such judicial records in-person. Such access is possible only if the clerk's office is open and its public terminal is running smoothly. Even after arriving at a clerk's office in person, AP reporters have encountered many obstacles to viewing documents that hinder their newsgathering.

[4] *See, e.g.*, Sudhin Thanawala, *Trump's Immigration Crackdown is Straining Federal Courts. Judges are Raising the Alarm,* Associated Press (Feb. 9, 2026), https://perma.cc/URW2-CBFH.

8. By requiring the AP's reporters and the public to travel to a courthouse to access otherwise unsealed judicial records, the Rule prevents timely news coverage and impedes any comprehensive, nationwide accounting of what petitioners and the government are asserting in immigration habeas cases.

9. Rule 5.2(c) has thus deprived AP of meaningful access to habeas petitions and other critical documents filed in immigration cases across the country, violating AP's constitutional rights under either of two First Amendment doctrines.

10. First, the Rule is a content-based restriction on speech that violates the First Amendment. Rule 5.2(c) on its face restricts access to filings based solely on the subject matter of the case—most relevant here, immigration. "[A]bove all else, the First Amendment means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dep't of City of Chi. v. Mosley*, 408 U.S. 92, 95 (1972). The Rule does exactly that, and so is subject to strict scrutiny.

11. The result—even if unintentional—is that immigrants' claims of unlawful detention by the federal government are much less visible to the public than other kinds of federal lawsuits.

12. Second, immigration habeas records in federal court are subject to a qualified right of access under the First Amendment, *see Press-Enter. Co. v. Superior Ct.*, 478 U.S. 1, 9–10 (1986) ("*Press-Enterprise II*"). The Rule dramatically narrows or eliminates that access and so can only be justified if it is "essential to preserve

higher values" and "narrowly tailored to serve" them, *id.* The Rule fails both requirements.

13. The Rule's scope does not fit any overriding or compelling government interest. To the extent the Rule is intended to protect privacy interests of petitioners in immigration habeas cases, it is both too broad and too narrow to accomplish that goal. It restricts electronic access to every word in every party filing, regardless of whether that information is sensitive, while still making potentially sensitive information available to anyone who travels to the courthouse in person and accesses the filing.

14. By unduly restricting access to judicial records in immigration habeas cases, Rule 5.2(c) violates the First Amendment.

15. AP respectfully requests that this Court declare Rule 5.2(c) unconstitutional and enjoin its enforcement to end the ongoing harm to AP's efforts to report on these matters of immense and urgent public interest. The relief sought here would simply require federal courts to treat immigration case records the same as all other civil records, instead of shielding them from public view.

## PARTIES

16. Plaintiff The Associated Press is an independent, not-for-profit, global news organization headquartered in New York City. AP's journalists cover the news in nearly 100 countries and all 50 states and the District of Columbia, providing coverage for over half the world's population. Reporters at AP provide daily news

coverage on a wide range of topics, including, but not limited to, immigration, politics, and investigations.

17. Defendant the Administrative Office of United States Courts ("Administrative Office") was established by Congress to provide administrative support to the United States Courts. The Administrative Office is supervised by a director pursuant to 28 U.S.C. § 601.

18. Defendant Robert J. Conrad, Jr. ("Conrad" or "Judge Conrad") previously served as a Judge of the United States District Court for the Western District of North Carolina and is now the Director of the Administrative Office of the United States Courts. He was appointed pursuant to 28 U.S.C. § 604 and began serving in this role on March 1, 2024. He is sued in his official capacity.

## JURISIDICTION & VENUE

19. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this civil action arises under the Constitution and laws of the United States.

20. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e)(1) and 28 U.S.C. § 1391(b)(1) because Defendants perform their official duties in the District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in the District.

## FACTUAL ALLEGATIONS

21. The most up-to-date data indicates that approximately 73,318 habeas petitions have been filed by noncitizens detained by the federal government since

January 2025—more than were filed during the past three administrations combined.[5]

22. These petitions for habeas corpus provide a vehicle for immigrants to challenge the legality of their detention and ask a federal court to order their release. *See* U.S. Const. Art. I § 9; 28 U.S.C. § 2241. The Framers of the United States Constitution "viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom." *Boumediene v. Bush*, 553 U.S. 723, 739–40 (2008). Indeed, it "was one of the few safeguards of liberty specified in a Constitution that, at the outset, had no Bill of Rights." *Id.* at 739.

23. Reporters at AP have sought to cover and contextualize the sharp rise in immigration habeas cases across the country, including by recounting what these immigrants allege in court filings and what the government argues in response, but have been unconstitutionally constrained from doing so by Federal Rule of Civil Procedure 5.2(c).

A. History and Application of Rule 5.2(c)

24. Rule 5.2(c) applies to any "action or proceeding relating to an order of removal, to relief from removal, or to immigration benefits or detention," as well as to "an action for benefits under the Social Security Act." Fed. R. Civ. P. 5.2(c).

[5] Ruth Talbot, Pratheek Rebala & Carla Astudillo, *Tracking Habeas Cases*, ProPublica (Aug. 25, 2026), https://perma.cc/GBF5-78TS.

25. In those cases, the Rule limits electronic access to the "full record" of an immigration case to parties and their lawyers only. *Id.* The public may view via PACER the "docket maintained by the court" and "an opinion, order, judgment, or other disposition of the court, *but not any other part of the case file* or the administrative record." Fed. R. Civ. P. 5.2(c)(2)(B) (emphasis added). To look at any other record, a nonparty must go in-person to the courthouse where the document was filed and use the public terminal in the clerk's office to view it.

26. While the Rule provides for electronic access to "the docket" and "an opinion, order, judgment, or other disposition" in immigration cases, such documents do not convey the full story of a case, particularly when a habeas petition is first filed. Moreover, habeas petitions detail the petitioner's claims—without access to those documents, the public utilizing PACER is unable to glean even the most basic facts and context of a given case.

27. In cases not covered by the Rule—that is, cases outside of immigration and social security cases—PACER automatically provides the public with electronic public access to any federal court record not under seal, amounting to "instantaneous access to more than 1 billion documents filed at all federal courts."[6]

28. PACER's functionality is in keeping with the country's long history of providing timely access to records in judicial proceedings, which is protected by a qualified First Amendment right of access to those records. *See Richmond*

[6] *Frequently Asked Questions*, PACER (last visited Aug. 31, 2026), https://perma.cc/R4CR-GUHB.

*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564–572 (1980); *Courthouse News Serv. v. Omundson*, No. 24-6697, 2026 WL 2603864, at *6 (9th Cir. Sep. 3, 2026). Providing the public and the press with such access is critical to the democratic system for a number of reasons, including that it helps keep the public informed about the functioning of the judicial system and enables them to hold participants accountable. *See Richmond Newspapers*, 448 U.S. at 564–572.

29. "[T]he federal courts of appeals have widely agreed that" this right of access "extends to civil proceedings and associated records and documents." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (citing authority). "Because the writ of habeas corpus is an important part of our Constitution and a 'vital instrument for the protection of individual liberty,' the public's qualified right to informed discussion about its government would apply no less in these proceedings." *Dhiab v. Trump*, 852 F.3d 1087, 1102 (D.C. Cir. 2017) (Rogers, J., concurring in part and concurring in the judgment) (quoting *Boumediene,* 553 U.S. at 743). "[C]riminal trials and habeas proceedings are designed to protect against abuses of Executive power and guard individual liberty," so "why would the First Amendment right of access apply differently in the two proceedings?" *Id.* at 1101.

30. Rule 5.2(c) departs from this widely recognized tradition of access and blocks PACER's instantaneous access to records in immigration cases. Instead, if a

nonparty uses PACER to attempt to view a document filed by a party in an immigration case, they would see only the following error message:




31. The current version of the Rule was promulgated in 2007 by the Supreme Court, on recommendation from the Judicial Conference pursuant to the Rules Enabling Act, 28 U.S.C. § 2072.

32. According to the advisory committee's note for Rule 5.2(c), immigration cases were deemed "entitled to special treatment" due to the purported "prevalence of sensitive information and the volume of filings."

33. Minutes from the Civil Rules Advisory Committee meeting in May 2006, when the current version of the Rule was last discussed, indicate that the Department of Justice initially proposed applying the Rule to immigration cases due to the "burden of redacting the administrative file and because of the risk that mistakes still would be made."[7] The minutes do not cite any further evidence that immigration records are unusually difficult to redact, or how often redactions are necessary.

34. The minutes also do not explain why regular sealing procedures would be insufficient to protect privacy. Instead, they suggest that "public media and

[7] *See* Meeting Minutes, Civ. Rules Advisory Comm., 3:110–12 (May 22–23, 2006), https://perma.cc/SZ3A-ENBJ.

academic researchers" could seek "a court order permitting access,"[8] without acknowledging the burden of moving for such an order in every case.

35. The minutes also do not reflect any input from noncitizens (or their representatives) whose private information is actually at issue. Indeed, in many immigration habeas cases, noncitizens have consented to the lifting of Rule 5.2(c) restrictions.[9]

36. Notably, Rule 5.2(c) applies to every document filed by a party in nearly every immigration case in federal court, regardless of whether an administrative file is ever submitted or what claims those cases may involve.

37. The Rule's scope includes immigration habeas petitions and has been applied to denaturalization suits by the government, among other cases.

38. For example, the Department of Justice recently filed a series of denaturalization complaints and published them on its website to tout its crackdown on "egregious violations of our immigration system."[10] But access to those same complaints—and any other party filings that may follow, including an Answer or

---

[8] *Id.*

[9] *See, e.g.*, Mot. to Remove Remote Access Restriction, *Suri v. Trump*, No. 25-1560, Dkt. No. 24 (4th Cir. June 24, 2025) ("Petitioner-Appellee consents to The Intercept's request to remove the access restrictions."); Text Ord., *Kordia v. Noem*, No. 3:25-cv-01072, ECF No. 47 (N.D. Tex. June 2, 2025) ("The parties agree to lift the current viewing restrictions on the docket."); Text Ord., *Khalil v. Joyce*, No. 1:25-cv-01935, ECF No. 29 (S.D.N.Y. Mar. 12, 2025) ("With the consent of both parties, the Court orders that the limitations on remote access to electronic files otherwise applicable in this case, see Fed. R. Civ. P. 5.2(c), are lifted.").

[10] Press Release, Justice Department Moves to Denaturalize 12 Individuals for Concealing Terrorist Support, War Crimes, Espionage, Sexual Abuse, and More, U.S. Dep't of Justice (May 8, 2026), https://perma.cc/5F22-QLRG.

Motion to Dismiss where a defendant may deny the government's allegations—is not available to the public on PACER because of Rule 5.2(c).

39. The only way for the public to obtain electronic access to filings covered by the Rule is by action of the court on a motion to lift the Rule 5.2(c) restrictions. *See* Fed. R. Civ. P. 5.2(c) ("Unless the court orders otherwise . . .").

40. This path imposes a huge burden on news organizations and other nonparties to move to lift the access restrictions in every case they might want to cover—an impossible task given the volume of these matters nationwide and the fact that a reporter cannot know which cases are newsworthy without being able to access basic information about it.

41. One federal district court has departed from the Rule by entering a standing order requiring the clerk to lift the restrictions in immigration cases after 30 days absent objection by a party, *see* D. Mass. Gen. Order 19-02 (June 1, 2019), https://perma.cc/C637-S8WB.

42. But one court taking action does not solve the problem across U.S. courts, which is the scope of the Rule's application. And even in Massachusetts, immigration habeas petitions and other important documents remain restricted for the first 30 days of an action, when important and time-sensitive motions could be filed at any time.

B. <u>Defendants' Role in Enforcing the Rule</u>

43. The Administrative Office of the U.S. Courts provides administrative, legal, management, program, and information technology services to the federal

courts. It is the agency responsible for implementing and executing Judicial Conference policies and applicable federal statutes and regulations.[11]

44. Defendant Robert J. Conrad is the "administrative officer of the courts." 28 U.S.C. § 604(a)(1).

45. As such, Judge Conrad "[s]upervise[s] all administrative matters relating to the offices of clerks and other clerical and administrative personnel of the courts," "[e]xamines the state of the dockets of the courts," and compiles the Federal Rule of Civil Procedure (which includes Rule 5.2(c)), among other duties. 28 U.S.C. § 604(a)(1)–(2), 20.

46. As part of his official duties, Judge Conrad also implements the policies of the Judicial Conference of the United States, which on information and belief, includes advising court administrators regarding procedural and administrative matters, managing the federal courts' system for electronic access to court documents, and prescribing the form and manner by which all federal clerks must maintain civil dockets.[12]

47. Clerks of federal district courts are required to keep a civil docket "in the form and manner prescribed by the Director of the Administrative Office of the

[11] *See* Administrative Office of United States Courts, Federal Register (last visited Sep. 4, 2026), https://perma.cc/FQ75-CHN9.

[12] *See In Profile: The Administrative Office of the U.S. Courts – Annual Report 2025*, U.S. Courts (last visited Sep. 2, 2026), https://perma.cc/6UTZ-8B4C; *Court Operations – Annual Report 2024*, U.S. Courts (last visited Sep. 2, 2026), https://perma.cc/TMB3-BZS8; Fed. R. Civ. P. 79(a)(1).

United States Courts with the approval of the Judicial Conference of the United States." Fed. R. Civ. P. 79(a)(1).

48. On information and belief, Judge Conrad supervises and directs each district court clerk's implementation and enforcement of Rule 5.2(c), including the directive to automatically restrict Plaintiff's electronic access to immigration habeas case filings via PACER.

C. Rule 5.2(c)'s Damaging Effects on AP's Newsgathering and First Amendment Right to Access Judicial Records

49. AP reporters have sought to report on the Trump administration's immigration enforcement on both a granular and systemic level, sometimes by telling individual stories and other times by analyzing widespread impacts of government policies. At both levels, Rule 5.2(c) has hindered their ability to do so in a timely and complete way.

50. AP routinely covers individual cases of detentions, from the detention of the five-year-old child detained in Minnesota[13] to the story of an eighty-five-year-old French widow held at a facility in Louisiana.[14]

51. Journalists face significant time pressure to gather information about these cases, particularly in the current media climate where newsworthiness fades by the day, if not by the hour or minute.

---

[13] Hallie Golden & Sarah Raza, *Federal Officials Detain a 5-Year-Old Boy Who a School Official Says Was Used as "Bait,"* Associated Press (Jan. 22, 2026), https://perma.cc/M4L5-N6JF.

[14] Jade Le Deley, *85-Year-Old French Widow Caught in Trump's Immigration Crackdown Describes Her Detention*, Associated Press (May 12, 2026), https://perma.cc/36SQ-NS8W.

52. Accessing court records fast enough to meet deadlines is rarely feasible for AP reporters when the documents are unavailable on PACER and is practically impossible when the courthouse containing the filings is hundreds of miles away.

53. For example, in April 2026, AP reported on the detention of Deisy Rivera Ortega, the wife an active-duty United States Army sergeant, which was newsworthy in part because it signaled a departure from a previous Department of Homeland Security ("DHS") policy of "leniency toward the families of members of the military and veterans."[15] Rivera Ortega was being held at a facility in El Paso, Texas, and challenged her detention in the U.S. District Court for the Western District of Texas through a petition for habeas corpus naming the warden of the El Paso processing center and several DHS officials as defendants. *See* Petition for Writ of Habeas Corpus, *Rivera Ortega v. Warden*, No. 3:26-cv-01121, ECF No. 1 (W.D. Tex. Apr. 17, 2026). She filed her habeas petition on April 17, 2026 (a Friday), and a motion for a temporary restraining order on April 20, 2026 (the following Monday). *See* Mot. for Temp. Restraining Ord., *Rivera Ortega v. Warden*, No. 3:26-cv-01121, ECF No. 6 (W.D. Tex. Apr. 20, 2026). None of those documents were available on PACER, and they remain inaccessible electronically today.

54. AP sought to cover Rivera Ortega's case as breaking news, but its then-Santa Fe correspondent lived more than five hours away from the El Paso federal courthouse by car and could not make the weekend round-trip journey before the

---

[15] Morgan Lee, *ICE Detains the Wife of an Army Sergeant in Texas as Military Family Leniency Wanes*, Associated Press (Apr. 21, 2026), https://perma.cc/6SUP-VTSE.

deadline. AP published an article about the case on April 21, 2026,[16] but AP was never able to access the court records and so could not include any details from them. Instead, AP had to rely on statements from Rivera Ortega's husband and her counsel, and from DHS.

55. In many of these cases, a detainee may affirmatively want their records to be made public and reported by the press, obviating any arguable privacy concerns. For instance, AP global investigative reporter Garance Burke was in touch with Reydel Martí Corona, a noncitizen who filed a habeas petition in late January 2026 while being held at a detention center in Los Fresnos, Texas. *See Marti Corona v. Shaver*, No. 1:26-cv-00077 (S.D. Tex.). He called Burke several times and told her he had been beaten and kicked by officials and asked her to help make public the conditions of his confinement and his mistreatment. Despite his wishes, Martí Corona's habeas petition and other case records were unavailable to the public via PACER at the time he reached out to Burke. Martí Corona re-filed his habeas petition in September 2026, and DHS promptly filed a motion for summary judgment. *See Corona v. Thompson*, No. 4:26-cv-07416 (S.D. Tex.). But both the habeas petition and DHS's dispositive motion remain unavailable on PACER pursuant to Rule 5.2(c). As a result, Burke—who is not based in Texas—is unable to track developments in Martí Corona's case in real time, despite his desire to make his story known.

56. Multiple AP reporters have made long and costly trips to courthouses across the country solely to view and print records in immigration cases. And even

---

[16] *Id.*

when an AP reporter *does* make it to the courthouse, in-person viewing of immigration habeas records can be slow and costly, delaying newsgathering.

57. As an example, AP's then-Santa Fe correspondent traveled to El Paso on February 11, 2026, to try to access immigration case records for a longer-term reporting assignment. When he arrived at the El Paso federal courthouse, he was informed by clerk's office staff that he was not authorized to access immigration habeas records at all, even in-person. After intervention by a supervisor, the reporter was informed that he was permitted to access the records, but in fact could not do so because the only public terminal in the courthouse was broken. He had to return to the courthouse the following day, after staff had repaired the computer.

58. Once the access terminal was repaired, the clerk's office charged AP's reporter 50 cents per page to print.[17] That price is five times the cost of accessing documents electronically via PACER.[18]

59. The AP reporter was instructed by the clerk's office in El Paso to provide a money order or cashier's check to pay for the printed records. He had to rush to the bank to procure the check and return before the courthouse closed at 5pm. It was a Friday. Had he not made it in time, he would have had to stay in El Paso and wait to get the records until the clerk's office re-opened on Monday morning.

---

[17] *See District Court Miscellaneous Fee Schedule*, U.S. Courts (last visited June 23, 2026), https://perma.cc/9VUJ-3WEH ("For reproducing any record and providing a copy in paper form, $.50 per page.").

[18] *See PACER Pricing: How Fees Work*, PACER (last visited June 23, 2026), https://perma.cc/U5KJ-XTAH.

60. The total cost for printing court records at a federal courthouse can quickly become very high (not including the separate and potentially high cost of transit to and from the courthouse).

61. Along similar lines, AP reporter Garance Burke has attempted to access immigration case records at the San Francisco courthouse in the Northern District of California but found the process cumbersome. During Burke's most recent visit in July 2026, she identified eight newsworthy cases using the courthouse's single public terminal. She attempted to print records from those cases, but when she approached the clerk to retrieve the copies, the clerk provided records from only one case. Burke asked for the other documents, but the clerk said only one case had printed and charged her $4.50 for it. The whole ordeal took nearly two hours, and in the end, Burke was denied access to seven of the newsworthy filings she attempted to print.

62. Upon information and belief, more than one federal district court has refused to allow printing or copying immigration habeas case records even from the courthouse's public terminal because of Rule 5.2(c).

63. For systemic-level analyses, Rule 5.2(c) makes reporting even more difficult. Though AP employs reporters in all 50 states, they cannot be at every federal courthouse at once—there is simply no way for AP and its reporters to view all or even most immigration habeas petitions filed across the country.

64. These difficulties were particularly apparent in a recent piece published by AP reporters in partnership with KFF Health News, which described allegations of medical neglect faced by detainees at immigration detention facilities across the

country.[19] The investigation sought to provide an overview of medical treatment in detention centers and uncovered instances of inadequate medical care at facilities across thirty-three states. It detailed allegations of delayed or denied medication dispersal for conditions like high blood pressure, diabetes, depression, epilepsy, Parkinson's and HIV; unanswered or delayed requests for treatment of injury and illness sustained while in detention; and delayed or denied access to routine or necessary medical treatments and surgeries for detainees.

65. To publish this investigation, reporters at AP and KFF used PACER to identify more than 33,000 immigration habeas dockets in cases filed between January 20, 2025, and March 2026.[20] But PACER access to practically every habeas petition on those dockets was blocked by Rule 5.2(c), preventing the reporters from reviewing them.

66. Instead, the reporters had to rely on habeas petitions sent directly by sources (such as lawyers for noncitizen petitioners) or provided by Habeas Dockets, a nonprofit project that coordinates a nationwide network of volunteers to travel to courthouses, print immigration habeas records, and make them available online.[21] The reporters also pulled several dozen case files from the District of Massachusetts, as that court's standing order departing from Rule 5.2(c) makes immigration habeas

[19] Bichell, *supra* note 2.

[20] *The Methodology of an AP-KFF Health News Investigation into Medical Neglect at ICE Detention Centers*, Associated Press (June 2, 2026), https://perma.cc/U92P-WGRB.

[21] *See About*, Habeas Dockets (last visited Sep. 2, 2026), https://perma.cc/7F3A-KQV2.

records more readily available. And in a few instances, AP and KFF reporters undertook the time-consuming and expensive task of traveling to courthouses in person to access the records themselves.

67. Even with all those efforts, the reporters were only able to view a small subset of immigration habeas petitions—less than 5,000, or about 13 percent of the pool of cases they had identified.[22]

68. The reporters then searched that small subset of reviewable court records, using key words to try to find petitions alleging medical neglect. That search yielded 500 results, and two reporters reviewed each manually. In the end, the reporters were able to identify 300 immigration habeas cases alleging "delayed, denied or deficient healthcare" provided by the federal government to detainees.[23]

69. Despite the AP and KFF reporters' effort to review as many cases as possible, their reporting on medical neglect in immigration detention centers could provide only "a limited window into the landscape of claims, rather than a comprehensive picture,"[24] in part because Rule 5.2(c) blocked their electronic access to hundreds of thousands of filings in immigration habeas cases.

70. In other reporting by AP on alleged poor conditions in detention centers,[25] reporters have been forced to rely on sources other than public court records

---

[22] Bichell, *supra* note 2.

[23] *Id.*

[24] *Id.*

[25] *See, e.g.*, Garance Burke, Adam Geller, & Valerie Gonzalez, *Worms in Food, Poor Medical Care, Lights on 24/7: Families Tell of Life in Texas Detention Center,* Associated Press (Feb. 28, 2026), https://perma.cc/2QXP-EFVG; Morgan Lee, Ryan J.

in immigration habeas cases because of Rule 5.2(c) access restrictions, making reporting more difficult and less complete.

71. Rule 5.2 has made it practically impossible for AP to undertake a comprehensive review of all immigration habeas cases, hamstringing any bird's eye-view approach to newsgathering on these matters of intense public concern and imposing extremely high costs for the coverage it is able to produce.

72. Further, the news value of a story often grows stale as time passes. By restricting access to immigration case records to in-person only—with that access being further limited by a clerk's office hours, a public terminal's functionality, availability of a cashier's check, and a printer's speed, among other things—Rule 5.2(c) drastically slows the ability of AP to report breaking news related to immigration cases and leaves the public in the dark about key filings in these matters.

73. Gaining electronic, contemporaneous access to immigration habeas case records across the country through PACER—the same way they are able to access other federal case records—would enable AP's reporters and other members of the press to engage in the broad, survey-style reporting on immigration issues that AP seeks to provide to the public. It would also provide other reporters and members of the public crucial insight into these cases.

---

Foley, & Micheal Biesecker, *Attempted Suicides, Fights, Pain: 911 Calls Reveal Misery at ICE's Largest Detention Facility*, Associated Press (Mar. 6, 2026), https://perma.cc/9VX5-HTTY.

74. Lack of access to these documents undermines the benefit of public scrutiny, and indeed often results in less prominent news coverage or none at all. It contradicts the principles of openness that are protected by the First Amendment and integral to a functional democratic system.

75. AP thus asks the Court to halt enforcement of the Rule in immigration cases by the federal district court clerks supervised by Defendant. The relief sought here would simply ensure that immigration cases are treated the same as other civil matters, with records made instantly available via PACER by default and parties free to seek sealing of sensitive information where appropriate.

## CLAIM FOR RELIEF

### COUNT ONE
### Violation of the First Amendment
### (All Defendants)

76. Plaintiff realleges and incorporates by reference the preceding paragraphs of the Complaint.

77. "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155, 163 (2015).

78. Rule 5.2(c) is unconstitutionally content-based on its face, as its restrictions on access "target" case records "based on"] [their] communicative content," *Reed*, 576 U.S. at 163—*i.e.*, based on the fact that they "relat[e] to an order

of removal, to relief from removal, or to immigration benefits or detention," Fed. R. Civ. P. 5.2(c).

79. Because the Rule treats immigration case records differently from other civil filings simply because they are immigration cases, it is subject to strict scrutiny, *see Reed*, 576 U.S. at 163. It fails that test, as its scope is not narrowly tailored to a compelling interest, including an interest in protecting parties' privacy.

80. To the contrary, the Rule applies to every page of every document filed by a party in every immigration case regardless of whether it contains sensitive information. If a document *does* contain sensitive information, the Rule's measures to protect it are ineffectual, as anyone could view it at the courthouse where it was filed. Also, judicial opinions are exempted from the Rule, even if they contain the same purportedly sensitive information found in the party filings.

81. The Rule therefore violates the First Amendment because it is a content-based restriction on speech.

82. Independent of its content-based nature, the Rule violates the First Amendment because it unduly restricts the right of the press and public—including AP reporters—to access judicial records, *see Press-Enterprise II*, 478 U.S. at 9. That right is critical to the public's ability to understand and monitor the workings of the judicial system, as well as the conduct of government officials.

83. This First Amendment right attaches to records filed in immigration cases in federal court, including noncitizen habeas petitions and other documents that play a role in the adjudicative process. *See Dhiab*, 852 F.3d at 1101 (Rogers, J.,

concurring in part and concurring in the judgment); *see also Planet*, 750 F.3d at 786 (citing authority).

84. Rule 5.2(c) infringes the First Amendment right of access by preventing timely access to immigration judicial records and blocking AP's reporters and the public from any electronic access to party filings in immigration cases. *See Omundson,* 2026 WL 2603864, at *6 ("The core public interest that the First Amendment right of public access protects includes 'obtaining contemporaneous news.'" (citation omitted)). The Rule applies "to the full record" of an immigration case, with exceptions only for the docket sheet and judicial decisions—but no exception for habeas petitions or other dispositive documents. Fed. R. Civ. P. 5.2(c).

85. The Rule is not tailored to any overriding interest, *see Press-Enterprise II*, 478 U.S. at 8, for many of the same reasons it fails strict scrutiny. As such, it violates the First Amendment.

86. On information and belief, Defendant Conrad has supervisory authority over federal clerks and management of the electronic access system for the federal court records. Accordingly, he must ensure that those clerks do not violate federal or constitutional law in providing access to federal court records—including by instructing them to cease applying the Rule 5.2(c) restrictions in immigration matters.

87. On information and belief, the Administrative Office of the U.S. Courts is the agency charged with implementing the administrative aspects of all Judicial

Conference policies, including the Federal Rules of Civil Procedure and the application of Rule 5.2(c)'s restrictions on electronic access.

88. The enforcement of the Rule in immigration cases is violating AP's First Amendment rights and causing ongoing harm to its reporting on these critical matters of public concern.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1) Declare that Federal Rule of Civil Procedure 5.2(c) unconstitutionally restricts access to records in immigration cases in violation of the First Amendment, pursuant to the Court's authority under 28 U.S.C. §§ 2201, 2202;

(2) Enjoin Defendants, and all their officers, agents, servants, employees, contractors, and attorneys, and those persons in active concert or participation with him who receive actual notice of the injunction—including in particular federal district court clerks—from enforcing Federal Rule of Civil Procedure 5.2(c) in an action or proceeding relating to an order of removal, to relief from removal, or to immigration benefits or detention;

(3) Award any further relief the Court deems just and proper.

Dated: September 15, 2026

Respectfully submitted,

*s/Renee M. Griffin*
Renee M. Griffin
D.C. Bar No. 1766634
Email: rgriffin@rcfp.org
Adam A. Marshall
D.C. Bar No. 1029423

Email: amarshall@rcfp.org
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
1156 15th Street NW, Suite 1020
Washington, DC 20005
Phone: 202.795.9308
Facsimile: 202.795.9310

*Counsel for Plaintiff The Associated Press*